# UNITED STATES DISTRICT COURT

for the

Southern District of Alabama

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
SEARCH OF THE ENTIRE PROPERTY OF ▮▮▮ )  Case No. 25-MJ-48-B
▮▮▮ INCLUDING THE ENTIRE RESIDENCE CURTILAGE, )
OUTBUILDINGS, VEHICLES LOCKED COMPARTMENTS, AND )
ELECTRONIC DEVICES )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Southern _____ District of _____ Alabama _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1791 | Possession of a Prohibited Object as a Prison Inmate |
| 21 U.S.C § 841 | Possession with the Intent to Distribute a Controlled Substance |
| 21 U.S.C § 846 | Conspiracy to Possess with Intent to Distribute Controlled Substance |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Joshua Coleman, Task Force Officer - FBI
*Printed name and title*

Sworn to before me and attestation acknowledged pursuant to FRCP 4.1(b)(2).

Date: February 24, 2025

_____
*Judge's signature*

City and state:  Mobile, Alabama

Hon. Sonja F. Bivins, United States Magistrate Judge
*Printed name and title*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

IN THE MATTER OF THE SEARCH OF THE
ENTIRE PROPERTY OF ███████████
███████████, INCLUDING
THE ENTIRE RESIDENCE, CURTILAGE,
OUTBUILDINGS, VEHICLES, LOCKED
COMPARTMENTS, AND ELECTRONIC
DEVICES, INCLUDING BUT NOT LIMITED
TO THE ELECTRONIC DEVICE USING
(251)373-6513

:
:
:
:
:

Case No.  25-mj- 48-B

**FILED UNDER SEAL**

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Joshua Coleman, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AFFIANT BACKGROUND

I make this affidavit in support of an application under Rule 41 of the Federal Rules of

Criminal Procedure for a warrant to search: **the residence of** ███████████ **located**

**at** ███████████ **to include the entire residence, curtilage,**

**outbuilding, vehicles, locked compartments (to include safes) and electronic devices**

**reasonably attributed to** ███████████ **including but not limited to the device using the**

**phone number** ███████████.

I am a Task Force Officer for the Federal Bureau of Investigation ("FBI") assigned to the

Mobile Field Division Southern District of Alabama Safe Streets Task Force with special

deputization powers to investigate violations of Titles 18 and 21 of the United States Code.  As

such, I am an investigative or law enforcement officer of the United States within the meaning of

Title 18, United States Code 2510(7), that is, an officer of the United States who is empowered by

1

law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1). I am also certified by the Alabama Police Officer Standards and Training Commission ("APOSTC") as a law enforcement officer as defined in Alabama 36-21-40 and as a part of my sworn duties is to investigate, apprehend, and assist in the prosecution for violations of Alabama Criminal Laws found in Title 13A among other violations not specified as a part of the Criminal Code of Alabama.

I have been a Task Force Officer with the FBI since April of 2022. I am currently employed by the Mobile County Sheriff's Office ("MCSO") as a deputy and have been employed in that capacity since May of 2021. Prior to working for MCSO, I was employed for 10 years with the Mobile Police Department ("MPD") with the majority of the time being spent as an investigator. I was also attached to the FBI SSTF as a member of MPD for approximately 3 years. As a Law Enforcement Officer, I attended the Alabama Peace Officers Standards and Training Commission (APOSTC) Academy in Mobile, Alabama, where I received instruction and training as a Law Enforcement Officer including training regarding firearms, emergency vehicle operation, the execution of search and arrest warrants, investigative techniques, and instruction on local, state, and federal criminal law. I have received advanced training in various types of investigations to include but not limited to narcotics and firearms investigations. I am familiar with methods employed by narcotics traffickers, distributors, smugglers, and users. My duties and responsibilities as a Task Force Officer include conducting criminal investigations of individuals and entities for possible violations of Federal laws, particularly those laws found in Title 18 and Title 21 of the United States Code. I also have a duty and responsibility to conduct investigations into violations of the Criminal Code of Alabama.

2

The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

1. The property is further described in attachment A of the affidavit.

2. The property to be searched for is listed in attachment B of the affidavit.

3. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 846, 21 U.S.C. § 841, and/or 18 U.S.C. § 1791 have been committed by target suspect(s). There is also probable cause to search the property of ████████, ████████████ (**TARGET LOCATION**) for evidence, instrumentalities, contraband, or fruits of these crimes, as further described in Attachment B.

## APPLICABLE CRIMINAL LAWS

1. The prison contraband statute, Title 18, U.S.C. § 1791(a)(1), makes it a federal crime for anyone to provide an inmate of a prison a prohibited item. Specifically in this case under subsection (d)(1)(A) a schedule 1 or 2 controlled substance, specifically fentanyl a scheduled 2 controlled substance, subsection (d)(1)(B) marijuana, (d)(1)(C) methamphetamine, and (d)(1)(F) a phone or other device. The punishment for an offense under this section depends upon the prohibited item involved in the offense. For the leading charge covered under (d)(1)(C) of this section, the punishment is a fine or imprisonment for not more than 20 years

2. Drug conspiracy statute, 21 U.S.C. § 846, makes it a federal crime for anyone, to conspire with one or more persons to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. The punishment for an offense

3

depends upon the amount and type of the substance involved but generally all of them require imprisonment for greater than one year.

3. Possession with Intent to Distribute a Controlled Substance, 21 U.S.C. § 841 (a)(1), makes it a federal crime for any person to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance. The punishment for an offense under this section is imprisonment for greater than one year.

4. The Application for Search Warrant and this Affidavit are submitted in support of my request for a warrant to search the target location described above, as set forth herein, for evidence of violations of 18 U.S.C. § 1791, 21 U.S.C. § 846, and 21 U.S.C. § 841.

5. I am familiar with the information contained in this Affidavit based upon the investigation I conducted and information I obtained through joint investigation with state and/or local law enforcement including the Escambia County, Alabama, Sheriff's Office.

6. Because this Affidavit is submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence of violations of 18 U.S.C. §1791, 21 U.S.C. 846, and 21, U.S.C. § 841 is present within the above-listed TARGET LOCATION.

## PROBABLE CAUSE FOR SEARCH











information from █████ and confirms that █████████ is residing within the area of the TARGET LOCATION.

## SEARCH OF THE TARGET LOCATION

22. The information in the investigation above, the electronic device using █████████ is used by ██████ and has been used to conduct illegal activities in violation of federal law, as set forth above. The electronic device using ████████ itself constitutes evidence of those illegal activities. Because ███████ lives at the TARGET LOCATION, there is probable cause to believe that the electronic device using █████████ is also maintained at that location.

23. There is also probable cause to believe that other evidence of the illegal activities described above will be found at the TARGET LOCATION. Based on my knowledge, training, and experience, illicitly purchased fentanyl utilized to convert to a liquid spray is generally purchased in powder form. The powder is then converted to a liquid where it is sprayed on the paper and allowed to soak the paper before being dried. The paper once dried is delivered to individuals where they will tear or otherwise cut up the paper for distribution. Each square of the paper is then sold. This is the process commonly referred to as "paper route" in contraband investigations.

24. Based on my knowledge, training, and experience, individuals like ██████████ involved in the spraying of "paper route" often utilize their residence to conduct the operation due to the need for a secure location to avoid detection by law enforcement or innocent third parties, and the time it takes to prepare the substance, spray the papers and allow them to dry. The investigation also reflects that this activity has been ongoing over a period of time, so a secure location such as ███████'s residence would be a reasonable location to maintain

10

the controlled substance, the materials and other supplies and paraphernalia used over and over again in this process. Therefore, there is probable cause to believe that narcotics, sprayers, paper, packaging materials like those described above, paraphernalia, or other items pertaining to the distribution of controlled substance(s) will likely be located inside the TARGET LOCATION and/or any outbuildings or property within the curtilage for this process.

25. Based on my knowledge, training, and experience and the knowledge, training and experience of those investigators familiar with drug trafficking organizations, often times individuals like ▮▮▮▮▮ involved in the distribution of narcotics will possess and carry firearms for protection from others involved in narcotics.

26. Based on my knowledge, training, and experience individuals involved in criminal activity will maintain possession of their clothing worn during various incidents. In this case the clothing worn during the drops by the suspect in the surveillance videos. Suspects usually store their clothing inside of the address which they reside, and will likely be located by investigators during their search.

27. Based on the affiant's knowledge, training, and experience and the knowledge training and experience of those investigators familiar with narcotics investigations, individuals involved in narcotics related offenses often will utilize multiple electronic communication devices to photograph, arrange meetings, and/or order narcotics through use of such devices. In addition to the electronic device using ▮▮▮▮▮ I believe other electronic devices ▮▮▮▮▮ possesses will also be maintained at the TARGET LOCATION. Accordingly, I believe that evidence of the crime of possession of controlled substance will be located on any other such devices located at the TARGET LOCATION. In the day of digital currency,

11

it is becoming common for individuals to utilize their electronic communication device(s) to pay and accept payment for services through digital based currency. Therefore, the seizure and search any such additional devices found at the TARGET LOCATION is justified under these facts to further the narcotics investigation.

28. Based on my knowledge, training, and experience narcotic trafficking is a heavy cash-based business, it is likely that those involved in narcotics distribution will likely possess a large sum of currency which they will generally keep at a safe location, often times closest to their person, such as in their residence. Individuals involved in narcotics distribution will also often utilize locking storage units or safes to hide and keep their product and/or currency safe from theft or discovery by others.

29. Exigent nature of the investigation: Fentanyl is an extremely dangerous and powerful narcotic that is directly linked to overdose deaths. The Center for Disease Control (CDC) and the National Center for Health Statistics estimates that in 2023 approximately 74,702 people died as a result of opioid overdose involving fentanyl. According to the Drug Enforcement Administration (DEA) just 2 milligrams of fentanyl is considered a lethal dose.

## SEARCH OF ELECTRONIC DEVICE ((251) 373-6513)

30. In light of the information provided above, I believe there is probable cause to support the search of the electronic device using the phone number ▮▮▮▮▮▮▮. I believe that data from that device will reveal crucial, actionable data and information that will allow federal agents to take affirmative steps to identify evidence, fruits, and instrumentalities involving ▮▮▮▮▮▮ and potentially other persons both known and not known to me at this time. Evidence that I believe lies within the device will allow law enforcement to further identify

12

the ways and means by which ████████ is conspiring to possess with the intent to distribute a controlled substance and introduce contraband into a prison like facility.

31.  Smartphones, computers, and computer technology have revolutionized the way in which individuals conduct personal and official business, as well as how persons interact with each other. Electronic data storage devices are able to hold large volumes of data that would normally require large physical storage containers for papers, documents, ledgers, pictures, books, etcetera. Whereas business records were previously maintained in tangible paper form, electronic data storage allows individual users and business to operate on an almost paperless basis. The development of computers has changed this. Computers basically serve four functions in connection with business records: production, communication, distribution, and storage.

32.  Criminals are also known to use cellular telephones to communicate with others about the ordering, delivery, possession, and / or sale of narcotics and other contraband. Criminals utilize the phone messaging and calling functions as well as messaging applications to text, multimedia message, voice, and/or video call to communicate. Criminals also utilize the camera function to photograph and/or video narcotics, weapons, currency, and other contraband associated within the narcotics business.

33.  Criminals are also known to use cellular telephones, regularly identified in the common vernacular as "smartphones," and other cellular communications device for the purpose of storing, preserving, and distributing evidence of their crimes. Although, these mobile devices are small, some are capable of storing extremely large amounts of data.

## SEIZURES AND CONTROLLED SEARCHES
## OF ELECTRONIC DEVICES

13

34. Based on my own experience and my consultation with other agents who have been involved in searches of electronic devices, searching digital information for evidence or instrumentalities of a crime often requires the seizure of all of a computer system's input and output peripheral device, related software, documentation, and data security device (including passwords) so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment. There are several reasons that compel this conclusion:

   a. The peripheral device that allow users to enter or retrieve data from the storage device vary widely in their compatibility with other hardware and software. Many system storage devices require particular input/output device in order to read the data on the system. It is important that the analyst be able to properly re-configure the system as it now operates in order to accurately retrieve the evidence listed above. In addition, the analyst needs the relevant system software (operating systems, interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media), as well as all related instruction manuals or other documentation and data security device; and

   b. I am familiar with and understand the implications of the Privacy Protection Act (PPA), 42 U.S.C. § 2000aa, and the role of this statute in protecting First Amendment activities. I am not aware that the device to be searched are protected materials pursuant to the PPA. If any such protected materials are inadvertently seized, all efforts will be made to return these materials to their authors as quickly as possible.

14

## UNLOCKING A DEVICE WITH BIOMETRIC FEATURES

35. The warrant I am applying for would permit law enforcement to compel the custodians/owners of each device to unlock the device subject to seizure pursuant to this warrant using the device's biometric features. I seek this authority based on the following:

    a. I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many electronic devices, particularly newer mobile devices and tablets, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners, facial recognition features, and iris recognition features. Some devices offer a combination of these biometric features, and the user of such device can select which features they would like to utilize.

    b. If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints. For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device. Once a fingerprint is registered, a user can unlock the device by pressing the relevant finger to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) located at the bottom center of the front of the device. The fingerprint sensors found on device produced by other manufacturers have different names but operate similarly to Touch ID.

c. If a device is equipped with a facial recognition feature, a user may enable the ability to unlock the device through his or her face. For example, this feature is available on certain Android device and is called "Trusted Face." During the Trusted Face registration process, the user holds the device in front of his or her face. The device's front-facing camera then analyzes, and records data based on the user's facial characteristics. The device can then be unlocked if the front-facing camera detects a face with characteristics that match those of the registered face. Facial recognition features found on device produced by other manufacturers have different names but operate similarly to Trusted Face.

d. If a device is equipped with an iris recognition feature, a user may enable the ability to unlock the device with his or her irises. For example, on certain Microsoft device, this feature is called "Windows Hello." During the Windows Hello registration, a user registers his or her irises by holding the device in front of his or her face. The device then directs an infrared light toward the user's face and activates an infrared-sensitive camera to record data based on patterns within the user's irises. The device can then be unlocked if the infrared-sensitive camera detects the registered irises. Iris recognition features found on device produced by other manufacturers have different names but operate similarly to Windows Hello.

e. In my training and experience, users of electronic device often enable the aforementioned biometric features because they are considered to be a more convenient way to unlock a device than by entering a numeric or alphanumeric passcode or password. Moreover, in some instances, biometric features are considered to be a more secure way to protect a device's contents. This is particularly

16

true when the users of a device are engaged in criminal activities and thus have a heightened concern about securing the contents of a device.

f. The passcode or password that would unlock the device subject to search under this warrant are not known to law enforcement. Thus, law enforcement personnel may not otherwise be able to access the data contained within the device, making the use of biometric features necessary to the execution of the search authorized by this warrant.

g. I also know from my training and experience, as well as from information found in publicly available materials including those published by device manufacturers, that biometric features will not unlock a device in some circumstances even if such features are enabled. This can occur when a device has been restarted, inactive, or has not been unlocked for a certain period of time. For example, Apple device cannot be unlocked using Touch ID when (1) more than 48 hours has elapsed since the device was last unlocked or (2) when the device has not been unlocked using a fingerprint for 8 hours *and* the passcode or password has not been entered in the last 6 days. Similarly, certain Android device cannot be unlocked with Trusted Face if the device has remained inactive for four hours. Biometric features from other brands carry similar restrictions. Thus, in the event law enforcement personnel encounter a locked device equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time.

35. Accordingly, the warrant I am applying for would permit law enforcement personnel to (1) press or swipe the fingers (including thumbs) of the custodian/owner to the fingerprint scanner of the device seized pursuant to this warrant; (2) hold the device found at the premises in front of the face the custodian/owner in order to activate the facial recognition

17

feature; and/or (3) hold the device found at the premises in front of the faces of the same individuals and activate the iris recognition feature, for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.

## CONCLUSION

I believe that this affidavit supports probable cause for a search warrant authorizing the search of the entire property located at ██████████████████████ **(TARGET LOCATION)** to include described in Attachment A to seek the items described in Attachment B.

Based on the foregoing finding of probable cause, I request that the Court issue the proposed search warrant, pursuant to Federal Rules of Criminal Procedure Rule 41 (e).

Respectfully submitted,

Joshua Coleman
Task Force Officer
Federal Bureau of Investigation

THE ABOVE AGENT HAD ATTESTED
TO THIS AFFIDAVIT PURSUANT TO
FED. R. CRIM. P. 4.1(b)(2)(B) THIS 24th
DAY OF FEBRUARY, 2025.

HON. SONJA F. BIVINS
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

### **Property to Be Searched**

The Property to be searched consists of:

ENTIRE PROPERTY OF ████████████████████████████████, INCLUDING
THE ENTIRE RESIDENCE, CURTILAGE, OUTBUILDINGS, VEHICLES, LOCKED
COMPARTMENTS, AND ELECTRONIC DEVICES, INCLUDING BUT NOT LIMITED TO
THE ELECTRONIC DEVICE USING ████████████.

## ATTACHMENT B

### Particular Items to be Searched for and Seized

All items relating to violations of 21 USC 841, 21 USC 846, and 18 USC 1791 including:

1. Controlled substances, including but not limited to Fentanyl and/or it's precursors agents.

2. Drug paraphernalia, to include but not limited to, cutting agents, packaging materials, heat sealers, scales, smoking devices, and needles.

3. Books, records, receipts, notes, ledger documents, bank statements and records, money order and cashier's checks, bank checks, safe deposit box keys, and other items evidencing obtaining, secreting, transferring, or concealing assets and/or obtaining, secreting, transferring, concealing, or spending money.

4. United States currency, financial instruments, or other items of value or processed derived from the sale of illegal drugs, and devices capable of counting large sums of currency.

5. Cellular telephones, including but not limited to the electronic device using (251)373-6513, tablets, laptops, computers, hard drives, flash drives, address books, documents, and papers that reflect names, addresses, and telephone numbers for conspirators/associates in the importation, manufacturing, and distribution of controlled substances, and the laundering and secreting of the proceeds of their drug trafficking.

6. Photographs and videos of coconspirators assets and controlled substances.

7. Photographs and videos of drug transactions.

8. Receipts of items evidencing the expenditure of the process of drug distribution, including but not limited to, clothing, furniture, jewelry, vehicles, and electronic equipment.

9. Indicia of occupancy and/or residency of the premises described herein and in Attachment "A," including, but not limited to, utility and telephone bills, cancelled envelopes and keys.

2

10. Firearms, firearm parts / accessories, and ammunition.

11. Safes or other locked containers, and their contents.

    As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); and mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

12. Clothing described in the affidavit to include a dark color jacket with light writing and light color jacket trimming, dark with white stripe track-suit style jacket, and/or dark hoodie.